## Case No. 6,974.

### HYDE v. SONTAG et al.

[1 Sawy. 249; [1] 8 N. B. R. 225.]

District Court, D. California. Aug. 2, 1870.

BANKRUPT—FRAUDULENT CONVEYANCE BY.

Judgment in favor of the assignee for the value of property conveyed to an alleged creditor of the bankrupt, notwithstanding that the conveyance was made more than six months before the commencement of the proceedings in bankruptcy, it appearing that the conveyance was fraudulent and intended to cheat and hinder creditors.

[This was a suit by Henry C. Hyde, assignee of George C. Eldridge, a bankrupt, against H. P. Sontag and George C. Eldridge.]

H. F. Crane, for assignee.

E. J. & J. H. Moore, Howe & Rosenbaum, and D. T. Sullivan, for defendants.

HOFFMAN, District Judge. The proofs in this case clearly establish that the bankrupt, being insolvent, made an assignment of all his property in this city to an alleged creditor with a view to give him a preference, and that the alleged creditor knew the bankrupt to be insolvent and that a fraud on the act was intended.

The adjudication in bankruptcy having been made on the voluntary petition of the bankrupt, which was filed more than six months after the assignment, the suit cannot be sustained under the provisions of the 35th and 39th sections [of the act of 1867 (14 Stat. 534, 536)].

It is contended, however, on the part of the assignee, that the sole object of the assignment was to hinder, delay and defraud the creditors of the bankrupt. That the transfer was merely colorable and to cover up the

---

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

title to the property, and that the bankrupt was not at the time indebted to the defendant.

In my judgment the proofs taken before the register sustain these allegations. The bankrupt admits that his property in Nevada had been attached, and that he had assigned the whole of it to the First National Bank of that state. It appears that very soon after making this assignment he left Nevada for this city, openly declaring his intention to put his property in this city where his creditors would not be able to reach it. Immediately on his arrival he made the transfer in question to the defendant. He started from Nevada on the nineteenth of May; he made the transfer to defendant on the twenty-second of May. The latter had been for some months employed as his agent to carry on the business of a coal yard, belonging to the bankrupt, at a salary of $75 per month.

The sale of the coal yard, its furniture, appurtenances, good will, and outstanding debts, appears to have been concluded in great haste and under circumstances fit to excite suspicion. The price for which it was bought ($1,500) seems to have been grossly inadequate, even on the defendant's own showing. His second explanation in regard to the value of the property transferred to him, in no respect alters the complexion of the matter. No accounting was had between the parties, such as would naturally take place in a business transaction of this nature.

The receipts from the coal yard are stated to have been about $1,300 per month. The defendant alleges that he sent to the bankrupt, at various times during the three months the latter was in Nevada, $900. The whole of this sum he charges as a debt due him from the bankrupt. He gives no account whatever of the large sums which, during that period, he must have received from the coal yard. That he did not expend any considerable amount in replenishing the stock of the establishment, is evident. For he would have us believe that the value of the stock at the time of the transfer was but a few hundred dollars.

The statements of both the bankrupt and the defendant are confused and contradictory. They entirely fail to furnish that clear, detailed and precise explanation which, if the transaction were an honest one, could readily be afforded.

Their close relations to each other subsequently to the transfer, corroborate our suspicions. We find the defendant advancing considerable sums to the bankrupt, becoming interested with him in a store on Fourth street, a large part of the stock of which they clandestinely carry off and dispose of on joint account. The bankrupt spends much of his time at the coal yard, but objects to parties being directed to him at that place, for fear, as he says, of exciting suspicion.

He files his petition in bankruptcy just two days after the six months from the date of the transfer have expired, and now to this suit by the assignee he pleads, while admitting a clear fraud on the bankrupt act by an assignment of all his remaining property to an alleged preferred creditor; that the assignment was not made within six months previous to the filing of the petition, and that the assignee cannot; therefore, recover.

All these circumstances seem to me clearly to disclose the true nature of the transaction, viz.: that it was a fraudulent contrivance and device by the bankrupt and the defendant to cover up and conceal the true ownership of the property, and to hinder, delay and defraud creditors. The value of the property sold, as testified to by the defendant himself was $3,226, and for this amount a judgment must be entered.